R E C E I V E D
MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

APR 02 2021

FILED_____ _____
DOCKETED_____
DATE        INITIAL

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

*Howard Wesley Cotterman*

Appellant(s),

vs.

*United States of America*

Appellee(s).

9th Cir. Case No. *20-10371*
*21-10040*

District Court or
BAP Case No. *4:07-CR-01207-RCC-CRP-1*
*District of Arizona, Tucson*

## APPELLANT'S INFORMAL OPENING BRIEF

*(attach additional sheets as necessary, up to a total of 50 pages including this form)*

**JURISDICTION.** This information helps the court determine if it can review your case.

1.  Timeliness of Appeal:

    a.  What is the date of the judgment or order that you want this court to review? *11/02/2020 and 1/27/2021*

    b.  Did you file any motion, other than for fees and costs, after the judgment was entered? Answer yes or no: *No*

        • If you did, on what date did you file the motion? _____

        • For prisoners or detainees, what date did you give the motion to prison authorities for mailing? _____

        • What date did the district court or bankruptcy appellate panel (BAP) decide the motion that you filed after judgment? _____

    c.  What date did you file your notice of appeal? *2/04/2021 pro se*
        *(11/10/2020 Public Defender)*

        • For prisoners or detainees, what date did you give your notice of appeal to prison authorities for mailing? *1/29/2020*

20-10371; 21-10040                                                    Page 1-1

## ORGANIZATION

*Pages* — additional pages inserted into the Opening Brief form are numbered sequentially separated by a dash from the form's page number. This is Page 1-1.

*Cases* — cited by name as alphabetized in Section 8.

*Items* for general reference and for cross-referencing within this document, are numbered sequentially within Section 2 Facts, Section 4 Claims, Section 6 Issues; and appended to the section number by a period. Cross-references are enclosed in brackets.

*Case documents* are identified by Document number and page or page.line number (or by section number for Doc 210).

### Case Documents Cited

| Doc # | Date (all 2020 unless noted) | Title |
|---|---|---|
| 178 | 6/22 | 3582 Comp. Rel. Motion filed pro se (handwritten) |
| 179 | 6/27 | Compassionate Rel. Motion transcribed from above |
| 191 | 9/11 | Comp. Rel. Motion Supplement by public defender |
| 197 | 9/25 | Prosecution's Response Brief |
| 200 | 10/16 | Public Defender's Reply Brief |
| 200-1 | 10/16 | Petitioner's Declaration for Reply Brief |
| 205 | 11/12 | District Court's Denial Order |
| 210 | 12/16 | Motion for Reconsideration filed pro se |
| 211 | 1/27/2021 | District Court's Denial Order |

### CONTENTS (numbered items and cases)

| | | |
|---|---|---|
| 2. FACTS | 2.1–2.28 | Pages 2; 2-1,2,3 |
| 4. CLAIMS | | |
|     Prosecutorial Misconduct | 4.1–4.4 | Pages 3; 3-1 |
|     Manifest Injustice | 4.5,6 | Page 3-2 |
|     Fundamental Unfairness | 4.7,8 | Pages 3-2,3 |
|     Abuse of Discretion | 4.9 | Pages 3-3,4 |
| 6. ISSUES FOR REVIEW | 6.1–6.25 | Pages 4; 4-1,2,3,4,5 |
| 8. LEGAL AUTHORITIES | | Pages 5; 5-1,2,3 |

9th Cir. Case No. 20-10371; 21-10040    *FACTS 2.1 to 2.8*    Page 2

**FACTS.** Include all facts that the court needs to know to decide your case.

2.    What are the facts of your case?

The facts are grouped and listed according to the 18 U.S.C. § 3582 framework of relevant § 3553(a) of History/Character, Public Protection, Available Sentencing, Other 3553(a) factors; and relevant Health/Medical circumstances. Where appropriate, each Fact references a source.

2.1  There's no uncertainty about what I did. To the distress I caused. To my shame of stepping way out of line. The facts are unchallenged. I never denied that I took the photos of my granddaughter. There were no others involved or knowledgeable nor other occasions. I offered no excuses for my shameful conduct, nor are there any.

2.2  Essentially all of the years since my father died when I was 11, I have been devoted to work, education, family and community. I worked my way through college while supporting a family. Employer reviews noted my work ethic, honesty, and integrity throughout 46 years of increasingly responsible management and executive positions at IBM, NCR, Intel, and Rockwell.

2.3  My professional associate of some 20 years, Dr. Kevin Forsberg, recipient of prestigious national awards and whose own contributions and integrity are beyond question, averred to the public defender that I was "honest and trustworthy" Doc 191 22.

2.4  My wife, Maureen, age 75, is a retired public school teacher and Hewlett-Packard trainer. We were married in 1990. She was shocked by my impulsive behavior, and distraught, knowing character traits for decades. Moreover, the P.O. was satisfied with Maureen's attitude and assurances given during his interview. Doc 200 5.18; Doc 200-1 #10.

2.5  No crimes were committed in our home or in California.

2.6  There was no ED CA conviction  Doc 205 5.24-5.

2.7  Matt Faubert, P.O. for ND CA interviewed my wife and son, specifically addressing potential supervisory conditions, they assured Mr. Faubert that they would support all conditions, including potential sex offender therapy that he raised. Doc 210 I.

2.8  The results of the P.O. findings and approval were not available for the Reply, Doc 200, despite written requests by me and the P. Defender.

(continued on Page 2-1)

2.9    I expressed my sincere remorse directly to my granddaughter in open court, my only opportunity for eye contact and her presence, or any kind of direct contact. Contradictions (Doc 210 III) to the prosecution's statements (Doc 197 24,17; 25,17) remain unopposed. I have shown genuine contrition and responsibility by words, but even more important by my actions. I have continued the many years of financial support despite the fact that my granddaughter's psychiatrist finding that her problems were not attributal to me. This fact also remains unopposed by the prosecutor and unacknowledged by the district court in its rejection of genuine remorse [6-8]

2.10   I did not flee. There was no arrest warrant; no "escape" Doc 211 3.14. It is true that I had offered to go into the Tucson ICE office early Monday to assist in accessing the password-protected file on my computer. My offer to do so at the border had been declined. So early Monday morning 4/9/2006, I tried unsuccessfully to obtain legal advice and an attorney to accompany me to the ICE office.

2.11   Having previously decided on Australia for our next retirement vacation, and hoping to resolve the border seizure from there, then to vacation, I immediately sought advice from both U.S. and Australian attorneys. The latter explained that a U.S. sentence would be much greater than Australian and that, at my age, I could likely avoid extradition. The U.S. attorney believed that the border seizure was illegal and advised me to litigate. By the time I accepted extradition, the Australian government was in transition after national elections, delaying my actual extradition by several months.

2.12   I am not a predator. The facts of my 1992 case, as determined by law enforcement investigation, prosecution and Superior Court Chief Judge Edwards, establish that my actions were intended to uncover child abuse. Nonetheless, the current prosecutor believes otherwise and apparently convinced this district court, through an elaborate courtroom circus performance, that the 1992 court got it all wrong and that I'm a predator and repeat offender.

2.13   The nature of the 1992 case, particularly my behavior, was thoroughly analyzed and vetted. Psychosexual evaluations were performed independently by three mental health experts, one of them court-appointed and another extending over 16 weeks. My rehab efforts have focused on the results.

2.14   I have repeatedly requested an independent psychological evaluation, which inexplicably, my trial attorney and court refused. (Doc 210 IV),

<u>2.15</u> The prosecution demands "medically diagnosed and established conditions." Doc 197 15,28

<u>2.16</u> There is no medical diagnosis to support the prosecution's speculation, adopted by the district court, that my behavior was that of a sexually-motivated predator.

<u>2.17</u> The reasons for my conduct, remaining unresolved, continue to be subject to speculation and various personal beliefs. For example, the prosecutor, without diagnostic support, openly expresses her belief that I'm a danger to the community.

<u>2.18</u> Having no direct contact with my granddaughter, my awareness of her life is through social media and other connections, usually incidental and untimely. I became aware that she expressed, during a phone call she received from the prosecutor, that I was not a danger to her or the community. The first chance I had to inform the court of this welcome revelation was my reconsideration motion, Doc 210. Additional details, unopposed, are in Doc 210 I, III. [6.5]

<u>2.19</u> I'm seeking to serve out my sentence in compliance with 3553(a), not "to be free" (Doc 197 25,18). "In fact, conditions exist that could be set to reasonably minimize any" risk of danger (Doc 200 6.02) and with harsh consequences of violation. See Section 8 Supervisory cases. Some conditions include a home confinement period to validate the P.O.'s approval and program.

<u>2.20</u> Supervised release conditions have been devised to address 3553(a)(2)(D) (medical care in the most effective manner and other correctional treatment) by enabling elective surgery for cataracts and other deterioration, such as dysphasia. "Other correctional treatment" could include enabling a sex offender program, if appropriate, since FCI-Sheraton has none. [4.3; 6.22]

<u>2.21</u> Regarding 3553(a)(6) Disparity, the prosecution originally offered a plea range of 12-20 years (Doc 191 20 Exh 5; Doc 200 10,11) (unknown to me). At 14 years now served, I am halfway through that range with good time.

<u>2.22</u> My health and medical conditions "fall squarely" into U.S.S.G. n.1(B): "experiencing serious deterioration in physical or mental health because of the aging process" (U.S.S.G. §1B1.13 Appl Note 1 (B)(i)). Doc 179 2; Doc 191 6.01; Doc 200 2.25-26. The other two requirements (i) Age 65, (iii) Served 10 years (I'm 80 and have served 14 years).

<u>2.23</u> U.S.S.G. 1B1.13 n.1(A) ECR factors were not claimed by me (200 2.21; 200-1 #6). (197 16,08) Notwithstanding.

20-10371; 21-10040      FACTS 2.24 to 2.28      Page 23

2.24 Self-care, "common" aging, "well-controlled," and "managed by medication" are not deterioration disqualifiers within the U.S.S.G guidelines and definitions. Except for a very few outliers, the case rulings bear this out, contrary to Doc 197 15,18;14.28;16.07 Doc 205 6.24.

2.25 That Hypothyroidism, Dysphagia, Diverticulosis, Prostate Hypertrophy, Parkinson's, and cardio/pulmonary disorders can be controlled by medication is irrelevant, unless, of course, the medicine stops or reverses the deterioration with aging, such as surgery does for Diverticulosis and Cataracts.

2.26 My Hypothyroidism is incurable and rapidly deteriorating as measured by a 250% increase needed for Levothyroxine in 2 yrs. (Doc 200-1 #8; Doc 179 Apdx 3). The same 250% in 17 years was considered serious deterioration by the Ennis Court.

2.27 Incomplete and inaccurate medical records are causing several disputes. Misleading statements, or assumptions by the prosecution, necessitated Doc 200 8.22 to 9.09 and Doc 200-1 declarations #5-8. My Parkinson's symptoms first appeared several years ago and became remarkable 2 years ago (Doc 200-1 #6). Likewise, the "occasional" swallow problem (Doc 197 15.07) actually occurred daily and caused concern by me and others in the dining room until I learned how to manage at the outside clinical exam.      [8. Head; Lee]

2.28 I regret that the two colonoscopy issues ventured far outside the medical realm into due process. The Diverticulosis colon disorder and diagnosis was on one of the hospital visits and procedures missing from the requested prison medical records, Doc 200 8.24 Exh C and 200-1 #5. Doc 205 2.02 was taken out of context and had nothing to do with the refusal. [4.7;6.12]

9th Cir. Case No. _20-10371; 21-10040_ _CLAIMS 4.1 to 4.2_ Page 3

**PROCEEDINGS BEFORE THE DISTRICT COURT OR THE BAP.** In this section, we ask you about what happened before you filed your notice of appeal with this court.

3. What did you ask the district court or the BAP to do—for example, did you ask the court to award money damages, issue an injunction, or provide some other type of relief?

I asked the district court for release from BOP supervision to home supervision under the Federal Probation Office. My request anticipated appropriate supervisory conditions to assure compliance with 3553(a) and was based further on facts qualifying for the "Age" factors of U.S.S.G 1B1.13 App. Note 1 (B), aging and time-served. Upon the court's denial, I requested reconsideration to occur after resolving the many open factual and legal disputes, and new evidence to include the favorable report and prosecutorial misconduct. I asked for a psychological evaluation and an evidentiary hearing to assure justice and fairness involving indiscretions.

4. What legal claim or claims did you raise in the district court or at the BAP?

_Prosecutorial Misconduct_ (Doc 210 III, not rebutted)

4.1 Prior to filing for reconsideration (Doc 200), I learned that, in a phone call from the prosecutor, my granddaughter conveyed that I was not a danger to her or the community (Doc 210 III). The prosecutor omitted this critical support from her account (Doc 197 25.14-19), hiding, rather than seeking, the truth.

4.2 Deliberate deception (misinforming and misleading) in that same phone call. My granddaughter purportedly stated that I don't deserve to be free... an early release." (Doc 197 25.18). Had she said that, it was

(Continued on Page 3-1)

5. **Exhaustion of Administrative Remedies.** For prisoners, did you use up all administrative remedies for each claim before you filed your complaint in the district court? If you did not, please tell us why.

Yes.

20-10371; 21-10040          CLAIMS 4.3 to 4.4          Page 3-1

apparently under the false impression that I would be freed from any custody with just 7 years left to serve (Doc 197 6.09). She did not realize, nor was she informed, that under compassionate release from prison custody, I would remain subject to stringent restrictions and close government supervision.

4.3. Exaggerations and falsehoods. The prosecutor got it backwards at Doc 197 23.05, erroneously asserting that "early release would prevent" treatment. In fact, early release would enable and facilitate treatment (2.20; 6.22). P.O. Faubert suggests as much (2.01). Doc 197 24.04 ("Most of adult life") obviously overstated and — along with other erroneous remarks — apparently led to "uncommon disregard for the law" Doc 205 2.16. Doc 197 25.07, 8 ("committed" and "crimes") are not only false but malefic; Doc 197 22.14 apparently misled the court, as well (Doc 217 3.13). The hyperbole at Doc 197 19.23; 22.15 is deceptive and misleading. The notebook computer that I always traveled with is the same that I always depended upon every day whether at home, work, or on the road — the only one equiped with GPS routing, Microsoft Office, and accounting software. Likewise, the prosecutor's unsubstantiated personal beliefs at Doc 197 19.24 to 20.01 ("perhaps") are just biased innuendos.

4.4. These instances are part of a pattern of misconduct, for example, the prosecutor's use of her own personal experiences, apparently to invoke the court's sympathies. See RT 6/11/14 p 8-9 (prosecutor relating her own experience with her grandfather's ring and what my granddaughter feels). See Darden ("inflame the passions or prejudices").

<u>Prosecutorial Misconduct Authorities</u> (See Section 8 for more cases; IDs)

   Banks ("We have several times underscored the 'special role played by the American prosecutor in the search for truth in criminal trials'" citing Strickler and noting "obligations plainly resting upon the prosecuting" to refrain from improper methods.)

   Berger (emphasizing a U.S. Attorney's compelling obligation "is not that it shall win a case, but that justice will be done.")

   Hayes ("The prosecuting attorney's obligation is 'to do justice.'")

   "Prosecutor's duty, under Due Process clause of Federal Constitution, is to disclose evidence favorable to the accused." 87 L.Ed. 2d 802. Due Process clause of Fifth Amendment is applicable here since the evidence relates to punishment issues.

   See also Mooney and Napue regarding deliberate deception.

20-10371; 21-10040          CLAIMS 4.5 to 4.6.5 4.7          Page 3-2

Manifest Injustice   (Also Section 8 Plain Error)
"In the context of a motion to reconsider, manifest injustice generally means that the Court overlooked some dispositive factual or legal matter that was presented to it." Erickson quoting In Re Rose, D. NJ 8/30/2007.

4.5. Errors in the 1992 PSR were improperly propagated through the current PSR to Doc 197 1.20-21 and then further drawn on by Doc 205 3.21-23.  See Doc 210 III for details ("revision of settled history grew out of an uncorrected 1992 PSR. FN1").

Castillo-Marin ("A sentencing court may not turn to the PSR for a narrative description of the underlying facts of a prior conviction.")

4.6.  That the court's ruling (Doc 211) does not censure — nor even mention — the prosecutor's misconduct (Doc 210 III noted above as not rebutted) is telling ("Prosecutor's dishonest conduct or unwarranted concealment should attract no judicial approbation" Banks at 696).

Fundamental Unfairness
"Fairness, of course requires an absence of actual bias... to prevent even the probability of unfairness... justice must satisfy the appearance of justice." In Re Murchison citing Offutt.

4.7.  The court's rulings ignore the documented problems with the prison medical services and records, and misleads.  Doc 205 2.10-11: no danger "because..." is a misleading, oversimplification of the actual circumstances. The prolonged rhetoric over my reluctance for colonoscopy requiring transport at the height of the pandemic further illustrates another disparaging misrepresentation of the actual circumstances. My concern about Covid exposure turned quickly into refusal of transport on 2/26/2020 when learning, only then, that the fecal blood had actually been discovered in September 2015 but went unreported until February 2020. Not only was a colonoscopy not urgent, but Medical Services should have ordered another FOBT on the spot. They did nothing, exacerbating the situation. This was another Medical Services efficacy matter for me; another self-care instance and issue of mishandling or losing medical records.  The matter of unfairness is that, instead of acknowledging the facts, the prosecution and the district court exploited the incident, attempting to discredit me and justify their beliefs. The court even casts unfounded aspersions on my wife (Doc 211 3.13) and conjures an "escape" at 3.14.

20-10371; 21-10040          CLAIMS 4.8 to 4.9          Page 3-3

4.8    The court does not seriously consider the combination of
supervisory and home confinement restrictions available for serving
out my sentence, or acknowledge the public defender's requests
(Doc 191 23-4; Doc 200 4,15-16), or the PO support [2.07, 20; 9.3].
The district court is surely aware of the vast majority of
compassionate release grants depending on supervisory conditions
to assure that the 3553(a) factors are complied with, including
numerous life sentences for rape and murder. See Section 8 for
details. The absence of psych evaluation and evidentiary
hearing results unfavorable to me should compel the
district court to devise fair and appropriate supervisory
conditions.      Most troubling, the court indicates that it does
not want to be bothered with ferreting out the truth, Doc 211 3.18,
even though an evidentiary hearing is meant to resolve much
more than those "reasons."

Abuse of Discretion

4.9    I realize that relief under 18 U.S.C. §3582(c)(1)(A)(i),
while at the court's discretion, is to be based on the facts and
the U.S.S.G 1B1.13 guidelines and definitions; 3553(a) factors
of who I am, not just what I did. Most of the Section 2 Facts
are in dispute or have been ignored by the district court, as
have the legal matters. Notwithstanding the prosecution's
and court's efforts to diminish specific transgressions, the
cumulative effect of even a few indiscretions is surely cause to
reverse the denials, or alternatively, to grant the relief sought
by Doc 210 I: a psych evaluation and evidentiary hearing
followed by reconsideration of compassionate release conditions.

      "A court inherently abuses its discretion when it makes
a legal error." Ruffin.

      Jones notes that a district court may abuse its discretion
by relying on an erroneous fact.

      Here, the district court relied on numerous "erroneous
factual or legal premises," "committed an error of law,"
e.g., declaring my pro se motions moot [6.2], and
ignored "unrebutted, legally significant evidence" of
prosecutorial misconduct. Sprague.

9th Cir. Case No. _20-10371; 21-10040_    _ISSUES 6.1 to 6.2_    Page 4

**PROCEEDINGS BEFORE THE COURT OF APPEALS.** In this section, we ask you about issues related to this case before the court of appeals and any previous cases you have had in this court.

6.    What issues are you asking the court to review in this case? What do you think the district court or the BAP did wrong?

6.1   The district court focused almost entirely on what I did, ignoring the mitigating factors. When it came to who I am, the court rejected objective experts, ignored authorities, relying instead on unsubstantiated personal beliefs.

6.2   The reconsideration denial begins by declaring the pro se motions moot (Doc 211 1.20; 205 7.04). The meaning and implications of that ruling only became apparent in Doc 211 when Extraordinary and Compelling Reasons (ECR) were misconstrued. My pro se motion (Doc 178 handwritten, Doc 179 transcribed) provide the basic facts in support of ECR, including four appendices enumerating disorders, medications, and service providers; and serves to

(continued on Page 4-1)

7.    Did you present all issues listed in Question 6 to the district court or the BAP? Answer yes or no: __Yes__

      If not, why not?

20-10371; 21-10040　　　　ISSUES 6.3 to 6.8　　　　Page 4-1

certify facts missing from the prison records [6.12]. The public defender's motion (Doc 191) was filed as a Supplement and recognized as such by the court (Doc 205 1.15, 21; 2.10). Doc 191 adds medical records, diagnoses, and exhibits, as well as citing legal authorities, case law and my pro se motion. The court's own authority (quoted at Doc 205 7.05-07) contravenes the moot ruling: a plain error results since it precludes essential punishment evidence. Furthermore, the pro se motion is referenced by subsequent briefings, depended upon by public defender. See also Rule 52(b). [4.9]

6.3. The second paragraph of the reconsideration denial (Doc 211) (Doc 211 1.2-2.04) reiterates points in Doc 205 that are disputed by the Facts above (Section 2).

6.4. The remainder of 211 seems intended to provide the missing prosecution Response/Rebuttal. Rather than being a reasoned analysis and judgment, the final paragraph (Doc 211 3.06-18) takes on the denigration style, hyperbole, and errors.

6.5. "Newly discovered evidence" (Doc 211 3.6), including the approval and report by P.O. Faubert; and my granddaughter's revelations that remain undisclosed, unacknowledged, and unrebutted; were not available to me or in time for Doc 200 and 200-1. [2.08,18] I did not claim (3) "remorse" (Doc 211 2.10) and (5) "diagnosed condition" (Doc 211 2.12) as newly discovered (the innuendos are addressed below).

6.6. Doc 211 3.08 ECR are addressed by 6.17 below.

6.7. Doc 211 3.10-11 reference to incarceration is misleading. It is the prosecution and the court that have argued "severity" by alleging a pattern that is anathema to the 1992 court findings and absent any diagnosis to support their beliefs. [2.12-17]

6.8. "possible acquiescence of his wife" (Doc 211 3.13) is untrue and unfair, apparently stemming from the prosecution's baseless diatribe (Doc 197 22.14-15; 25.7-8). An "escape" (Doc 211 3.14-15) is unjust hype [2.10]. The deceptive "remorse" statement (Doc 211 3.19) serves to reconfirm the minimization conundrum (Doc 210 III) that any defensive words will be misconstrued by this prosecution and court. So my remarks here about remorse are to illustrate and rebuke the practice. While in general, real harm is not undermmed by just remorseful words, it is certainly reduced by remorseful actions noted [2.9], and especially in view of my granddaughter's psychiatrist's finding (Doc 210 III) that the district court

doesn't acknowledge. It's clear that nothing I say or do matters to this prosecutor or court, especially regarding my shame and genuine contrition.

6.9   The Doc 205 denial, written in the prosecutor's vernacular, highlights the negatives and dismisses, ignores, or misrepresents the facts.

6.10   Doc 205 1.25 - I'm 80 with rapidly deteriorating hypothyroidism, but mischaracterized as a "70-year-old male, with thyroid disorders."

6.11   Doc 205 1.26-28 - contrary to "complains" and "prognosticates," I have chosen self-care and consultations with the pharmacist, Dr. Joyce, for cardio and pulmonary disorder workarounds (Doc Doc-1 #7). For the basic facts regarding Parkinson's, see Doc 179 apdx 3 and 4 [2.26-27].

6.12   Doc 205 2.01-03 - accusations and contentions of "fears," "invasiveness," and "no diagnosis" are not just false, but deceptive, as the facts reveal. I do not fear that blood found five years ago is now a sign of cancer, but rather as a sign of ineffective medical care (Doc 179 apdx 2). I wasn't concerned about "invasiveness," but rather my Covid vulnerability (Doc Doc-1 #5). Not having a colon cancer diagnosis is not the issue, but missing records of the hospital colonoscopy and Diverticulosis diagnosis are issues as are the other missing records and diagnoses, and their being missing ignored by the court. The public defender made extensive efforts to obtain missing records from CCA as noted in Doc 191. My pro se Doc 179, far from being properly moot (Doc 205 7.04) serves as my certification of medical conditions [8. Heads; Lee].

6.13   Doc 205 2.10-11 "not a danger to society because he has been an exemplary inmate" misrepresents the danger issue, weaponizing one relatively minor aspect to diminish the significant pages of "positive equities" (Doc 200 8.5-15), character references and even the significant and supportive statement by my granddaughter that the prosecutor hid and the court ignored (both the statement and its hiding).

6.14   Doc 205 3.18-23 "as early as 1991" is an inappropriate innuendo, but even more inappropriate is the propagation of errors from the 1991 PSR for reference here [4.5]

6.15   Doc 205 3.24-25 - There was no conviction in ED CA in 2007 or at any other time.

6.16   Doc 205 Section IV 3553(a) Factors and Section V ECR are where the district court got it very wrong (Doc 205 pages 5,6)

6.17   Doc 205 6.08 V ECR - with the exception of two phrases (Doc 205 6.24, 26), this section belabors non-issues such as

20-10371; 10040                ISSUES 6.18 to 6.19                Page 9-3

"mere existance" of Covid-19 is not enough alone " (never claimed) or mockery such as cataracts being a Covid-19 risk. (an absurd distraction). Section V ECR does raise one issue: "being controlled by medication." While a few courts among hundreds may have erred using "controlled by medication" as a basis for denial, that basis is nowhere to be found in ECR guidelines and definitions as a disqualifier. Clearly, all aging disorders are controlled to some extent by medication or self-care, otherwise we wouldn't have nearly universal dependency on meds and such high life expectancies. [2.25]. Doc 205 6.26, rejecting deterioration with age is misplaced. Innumerable compassionate release grants are based on a subset of my chronic and debilitating disorders, some on the basis of hypotension alone (coupled with time-served and 65+). Doc 179 Apdx 3.1. [2.26]

6.18  Doc 205 5.06 "Relevant policy statements issued by the Sentencing Commission" are raised by the court only in discussing the need to avoid disparity, but they are relevant here since, increasingly, courts are finding harsh sentences as ECR [S. Baker; Vargas]. I was sentenced in Sept 2014 just after the Sentencing Commission published its statistics: the mean federal sentence in the child pornography category was 136 and the median was 120 months. The category included 333 Production and 1609 Trafficing and Possession offenses. The Price, Dorvee, Sawyer, and Ivey cases identified in Section 8 emphasize the upward pressures by the guidelines such that they do not adequately distinguish between the least and worst offenders. The Second Circuit in remanding Jenkins noted that he was "near the bottom of the distribution of offenders but the district court imposed a sentence near the top of the statutory range." The Second Circuit made it clear that the sentencing judge, Chief Judge Suddaby, went "far overboard," being personally offended by Jenkins and disliked him — an apparent "factor as justification for dramatically increasing Jenkins' sentence." "While we don't condone Jenkins' lack of respect for the law, it simply cannot bear the weight assigned to it." Dorvee at 183.   In granting compassionate release to Baker, the court ruled Baker's harsh sentence as an extraordinary and compelling reason over the prosecution's objections.

6.19  Doc 205 5.01-6.07 IV 3553(a) Factors, "significant criminal history engaging in similar offenses" (Doc 205 5.13-14 deserves close scrutiny.

6.20  Doc 205 5.15 "fled," repeated at Doc 211 1.28, together with "escape" at 3.15, amount to relentless attack and misrepresentation of the facts, totality of the circumstances, and legal implications. The court does not acknowledge that I waived extradition nor the precipitating circumstances even though this same judge ruled that the seizure at the border was illegal. [2.10,11]

6.21  Doc 205 5.13,14,16. The "significant criminal history" consists of an ill-conceived journalistic investigation of child abuse thirty years ago, foolishly believing that the ends justified the means and that I would be rewarded, not arrested. It's true that the crime was significant, but the entirely different context and circumstances dispel beliefs of "engaging in similar offenses" and "repeated actions." The nature of the 1991 incident was thoroughly investigated and resolved by the authorities and the 1992 court (Doc 210 III and FN1; IV and FN2). The widely-subscribed professional investigator's training and workshop, including related projects by attending investigative journalists (were verified, including the training materials in my home).

6.22  Doc 205 5.05 "Kinds of sentences available" are reflected by the public defender's entreaties for the court to consider "restrictive supervision of the U.S. Probation office for the remainder of his life." Doc 200 11.11. Doc 191 22-24 and Doc 200 4.15, 10.24 present a range of facts and factors for the court's review, yet the court summarily dismisses supervised release without acknowledging the "kinds of sentences available." (Doc 211 3.09) The court doesn't consider the positive implications of the U.S. Probation Office review and approval (Doc 200 I) [2.7] versus situations where the "probation officer expressed significant doubt," e.g. Lupold. Effectively, $3582 relief with appropriate supervisory conditions imposed, is not a release but rather a transfer from BOP to USPO supervision. "Numerous district courts [across the circuits] have found that a court --- need not choose between immediate unconditional release and no relief at all," Curry.

6.23  Doc 205 5.29 "undermine the steep punishment provided to sex offenders." Objective judges have proactively addressed excessive and needlessly steep punishment by recognizing the role of ECR and supervisory conditions as "not subverting the purpose of punishment but rather fulfilling the purpose of §3582(c)(1)(A)," Ezell citing Brooker and others. The steep punishment of some sex offenders is briefly addressed above [6.18] in the context of ECR. The Jenkins sentence near the statutory max was considered "shockingly high" serving "no valid public purpose"

20-10371; 21-10040    ISSUES 6.2A to 6.25    Page 4-5

"The court shall impose a sentence sufficient, but not greater than necessary to comply with purposes set forth in paragraph (2) of this subsection." §3553.(a). (The district court cites Trujillo as authority for 3553(a) factors (Doc 205 5.08) but misses the criticisms of that judge's omissions and imposing sentences "greater than necessary.") Supervisory conditions very effectively address paragraph 2 purposes, including (C) public protection and (D) provide defendant with needed medical care or other correctional treatment in the most effective manner. Regarding (2)(D), the wide range of supervisory conditions accommodate medical needs such as cataracts and surgeries; and sex offender treatment, contrary to the prosecutor's false statement (Doc. 197 23.05). P.O. Faubert addressed such treatment in his review and approval. The lack of a sex offender program at FCI-Sheridan and most other federal prisons adds impetus to the court's concerns. [2.7; 2.20; 4.3] "Any risk to the community can be managed by a term of supervised release, see 18 U.S.C. §3142(g) (noting conditional release can mitigate danger to the community)." Johns. [8. Johns' extensive release conditions; very stringent conditions for Lee and Dodd for violations.]

6.24 Doc 205 5.25 "create a sentence disparity." Rather than creating a disparity, supervisory conditions can reduce disparity brought about by sea changes such as the thousands of new compassionate releases granted under widely-varying conditions. In view of the facts throughout, including the 12-20yr. plea offer (Doc 191 Exh 5, page 20; Doc 200 10.12), there is no risk of disparity with appropriate supervisory conditions. In fact, supervisory sentence reduction is needed to reduce disparity unless a psych evaluation and evidentiary hearing prove otherwise.

6.25 Doc 211 3.17-18 The evaluation and evidentiary hearing are not just for the purpose exposing the actual reasons, but also to distinguish reality from beliefs, establish character traits and identify historical facts that can resolve the many disputes, especially the danger and 3553(a) factors. These purposes are well-known to the district court, which continues to indicate intransigence; that it "will not change this analysis." "It bears remembering that compassionate release is a misnomer." "Most relief granted acts to end the term of imprisonment but impose a significant of probation or supervised release in its place." [8. Brooker]. I beg this Court to invoke the Parsimony Principle based on who we are as a society and the role of the courts in ensuring we reach that normative goal. It's divorced from retribution, condemnation or worthiness. So too is the §3582(c) focus.

9th Cir. Case No. 20-10371; 21-10040                    Page 5

8.    What law supports these issues on appeal? (You may refer to cases and
      statutes, but you are not required to do so.)

The cases are listed alphabetically with each section grouping.
Case names beginning with "U.S. v." omit that beginning, but otherwise
use both party names. Cases that are cited within the sections are
noted, and any quotations are not repeated below.

CLAIMS cases

Prosecutorial Misconduct (ref: Section 4,3,4)
Banks v. Dretke  540 U.S. 668, 696; 157 L.Ed.2d 1166, 1193 (2004)
Berger  295 U.S. 78, 86; 79 L.Ed. 1314 (1935)
Darden v. Wainwright  477 U.S. 168, 192; 91 L.Ed.2d 144 (1986) ("The
prosecutor should not use arguments calculated to inflame...")
Hayes v. Brown  399 F.3d 972, 978 (9C 2005)
Kyles v. Whitley  514 U.S. 419, 437; 131 L.Ed.2d 490 (1995)("the
individual prosecutor has the duty to learn of any favorable evidence known
to others acting on the government's behalf.")
Mooney v. Holohan  294 U.S. 103, 112 (1935) (re: deliberate deception)
Napue v. Illinois  360 U.S. 264, 269 (1959) (re: deliberate deception)
Strickler v. Greene  527 U.S. 263, 281; 144 L.Ed.2d 286, 302 (1936)
(emphasizing "the special role of the American prosecutor to search for truth.")

Manifest Injustice  (Castillo-Martin at bottom of this group)
Babwah  972 F.2d 30 (2C 1992) (finding of plain error by appellate
court implicated manifest injustice, citing U.S. v. Draper 553 F.3d 174
Erickson  D.V.I  3:19-cr-0053  9/18/2020 citing In Re Rose 187 F.3d 926
(8C 1999)
Keppler  2 F.3d 21, 24 (2C 1993) (noting that plain errors "affect...
substantial rights... the violation of which would result in manifest injustice")
Pelito  767 F.2d 607 (9C 1985) ("strict compliance with rule
32(c)(3)(D) is required... failure must result in remand")(re: PSR propagate)
Molina-Martinez  194 L.Ed.2d 444, 452  (re: plain error)
Castillo-Martin  684 F.3d 914 (9C 2012) (PSR)

Fundamental Unfairness
In Re Murchison  99 L.Ed. 942 (1958) citing Offutt v. US  348 U.S. 11

Abuse of Discretion
Jones  980 F.3d 1098, 1112 (9C 2020)
Ruffin  978 F.3d 1000, 1005 (9C 2020)
Sprague  4th Circuit  20-6335

(continued on Page 5-1)

EXTRAORDINARY and COMPELLING REASONS Authorities
App. Note 1B1.13 (B)(ii) and (D); Records
Ennis WDTX 5/14/2020 ("managed," "progressively debilitating,"
Hypothyroidism deterioration of 150% in 17 years considered serious).
Johns D.AZ cr-91-392-TUC-CKJ 6/07/2019 (BOP cannot provide
conventional treatment that would substantially improved Johns' medical
or physical condition because ... age-related." Also note supervisory conditions)
Lee NDCA 19-cr-00419-ST-1 5/15/2020 (accepting declarations
from Lee and his wife in lieu of medical records). Lee cited by:
Head EDCA 6-14-2020 ("sworn declaration" supports ECR).
Haynes EDNY 4/22/2020 (ECR based on 1B1.13 (D). Cites 13 cases.
Parker CDCA 5/21/2020 ("medical conditions related aging that
will not improve" citing Cantu-Rivera SDTX 89-cr-204-H 6/24/2019
(pre-Covid; "meets ... aging process" n.1(B) incl. prostate, cataracts as
conditions). Also note that Parker was serving a life sentence.
Scparta SDNY 4/19/2020 (hypertension + cholesterol)
Smith SDNY 4/13/2020 (thyroid condition + cholesterol)
Harsh Sentence as ECR
Baker EP MI 8/3/2020 (relief granted, downward adjustment)
Brooker 976 F.3d 228 (2C 2020) ("safety valve" for overly harsh)
Dorvee 616 F.3d 174 (2C 2010) [6.18]
Jenkins 854 F.3d 181 (2C 2016) [6.18]
McDonel ED MI 1/13/2021 (attacks punishment focus)
Price 775 F.3d 878 (7C 2013); CD IL 10/11/2013; both attack guidelines
Sawyer 672 Fed.Appx. 63 (2C 2016) (30 yrs appropriate only for extreme, heinous")
Vargas SDNY 88-cr-325 11/24/2020 (prosecution overruled on
ECR designation and supervisory conditions to "adequately ensure his continued
good behavior.")
"2019 Annual Report and Source book of Fed. Sentence Statistics
Averages: Murder 255 mo.; Kidnapping 171 mo. as reference for
overly harsh sentences considered ECR. Cases cited.
SUPERVISORY RELEASE CONDITIONS (Kinds of sentences available)
"Release" as Misnomer  - examples
Adams ED MO 4:18-cr-93 RLW 1/11/2021 citing Brooker, Zullo
Brooker, Zullo 976 F.3d 228 (2C 2020) ("it bears remembering
that compassionate release is a misnomer" serving to "end the term
of imprisonment but impose a significant term of probation or
supervised release.") [6.23][6.25]

Curry D. MD (9C) 1/14/2021 ("Numerous district courts [across circuits] have found that a court --- need not choose between immediate unconditional release and no relief at all.") [6.22]

Dodd SD IA (8C) 3:03-cr-00018 7/29/2020 (harsh consequences if conditions violated; restrictions promote respect of law; protect public)

Harris D.MD. 12/30/2020 citing Zullo

Henarah SD NY 11-cr-93-1 (JSR) (1-13-2021)("as 2nd Circuit has explained, compassionate release is a misnomer --- with supervisory conditions, it is not a release ... and it may not even be a reduction.")

Lupold 806 Fed. Appx. 522 (9C 2020) (P.O. expresses doubts as to defendant's willingness to comply with supervisory conditions) [6.22]

Sawicz ED NY 4/10/2020 Extensive supervisory conditions

Williams ED MO 4:17-cr-310-5RLW 11/25/2020

Zullo 976 F.3d 228, 237 (2C 2020) see Brooker. [6.23, 25]

Supervisory Release Conditions Eliminate Danger Risk

Bellamy D.MN cv151658 JRT LIB 7/25/2019 ("Any limited risk can be mitigated by supervision.")

Karr ED KY 2/18/2020 Citing seven cases, including Bellamy, Johns, McGraw, and Spears, that "reasonably eliminate danger by imposing release conditions.

McGraw SD IN cr-00018 5/6/2019 Listing 19 conditions, together with justifications.

Pagliuca ND CA 5-18-2020 "unlikely to pose a danger with additional conditions of supervised release")

Vargas SD NY 88-cr-325 11/24/2020 ("Supervised release will adequately ensure his continued good behavior and abstention from violent or criminal conduct.")

§ 3553(a) FACTORS

Sufficiency; Parsimony Principle

Dean v. United States 197 L.Ed.2d 490 (2017) The Supreme Court, citing specific 3553(a) factors, unanimously reversed a 400 mo. sentence that the 8th Circuit had upheld. Chief Justice Roberts emphasized the "parsimony principle, a broad command that instructs the courts to 'impose a sentence sufficient, but not greater than necessary' --- to serve the four overarching aims of sentencing" citing 3553(a)(1), (2)(A)—(D) and Gall at 50, n.6 (2007).

Dodd SD IA 3:03-cr-00018 7/27/2020 ("restrictions promote respect for the law --- protect the public")

20-10371; 21-10040                                          Page 5-3

Lee  ND CA 5/15/2020  (noting inadequacies of medical care,
thus the court imposed monitored home confinment with provisions for
Lee's medical and mental treatment ) (§3553(a)(2)(D) "most effective
manner") ("every effort will be made to facilitate" drug treatment.)

McGraw  SD IN 5-06-2019 ("further incarceration in his
condition would be greater than necessary to serve the purposes
of punishment set forth in §3553(a)(2)"; 19 supervisory conditions).

Trujillo  713 F.3d 1003 (9C 2013) ("Trujillo presented nonfrivolous
arguments --- district court committed legal error.") [6.23]

§3553(a)(6) Disparity
Budd  CD IL 4:07-cr-40026  1/11/2021 ("concern [about disparity]
can be alleviated by imposing a term of home confinement on release"
"14 yrs Defendant has served constitutes a harsh sentence for deterrence.")

Castillo  SD TX H-08-146-01 5/28/2020  (served 12 years of life
sentence... "exemplary prisoner"... "months shy of age 65 to otherwise
qualify "under §1B1.13 cmt. n.1(B)"... released under n.1(D) catch-all).

Johns  cr-91-392-TUC-DKT  D.AZ 6/27/2019  (served 22 years
of 40 year sentence; "medical condition is age-related";
extensive-supervisory conditions).

Johnson  WD AR 3/29/2020  ("time-served sufficient... reflects
seriousness, promotes respect, just punishment, adequate deterrence....
Defendant request to conditions of supervised release is imminently reasonable.")

Regas  D.NV 6/03/2020  Life to time-served, similar circumstances.
Sawyer  672 Fed.Appx. 63 (2C 2016) ("sentence was excessive.")

REMORSE and CONTRITION
Cortez  299 F.3d 1030, 1038-39 (9C 2002) ("If Cortez manifested
appropriate contrition, exercise of his constitutionally-protected
rights cannot be held against him.")

Hill  953 F.2d 456, 461 (9C 1991) (recognizing contrition and
acceptance of responsibility despite defendant exercising a
constitutional right to which he was entitled.

9th Cir. Case No. _20-10371; 21-10040_                                    Page 6

9.  **Other Pending Cases.** Do you have any other cases pending in the court of
    appeals? If so, give the name and docket number of each case.

    *No.*

10. **Previous Cases.** Have you filed any previous cases that the court of appeals
    has decided? If so, give the name and docket number of each case.

    *09 - 10139 Suppression*
    *14 - 10454 Sentencing*

_Howard Wesley Cotterman 30367208_         _Howard Cotterman_
Name                                       Signature

_Federal Corr. Institution - Sheridan_
_P.O. Box 5000_
_Sheridan, OR 97378-5000_                  _3/29/2021_
Address                                    Date

RECEIVED
MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

APR 02 2021

FILED
DOCKETED _____
DATE _____
INITIAL _____

March 29, 2021

TO: Clerk of the Court
U.S. Court of Appeals for the Ninth Circuit
P.O. Box 193939
San Francisco, CA 94119-3939

FROM: Howard Cotterman
FCI-Sheridan
P.O. Box 5000
Sheridan, OR 97378

RE: Opening Brief for cases 20-10371 and 21-0040

Please file my handwritten Opening Brief enclosed. I have enclosed the Ninth Circuit's instruction (inquiry response) to "Submit the original only if you are filing by mail."

I hereby certify, under the rules of perjury that the enclosed is true and correct to the best of my knowledge.

## Certificate of Service

I hereby certify under penalty of perjury that I submitted the enclosed Opening Brief for Ninth Circuit cases 20-10371 and 21-10040 to the Office of the Clerk of the Court, U.S. Court of Appeals for the Ninth Circuit; P.O. Box 193939, San Francisco, CA 94119; by placement in the institution's Legal Mail, with First Class U.S. Postage paid and properly affixed, on or before March 29, 2021.

Howard Cotterman          3/29/2021
Howard Wesley Cotterman, Appellant